**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| YOLANDA JONES, | ) | CASE NO. 3:13-CV-01781 |
| | ) | |
| Plaintiff, | ) | JUDGE PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff, Yolanda Jones ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying

her application for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a).  This Court has jurisdiction pursuant to

42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate

Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation.  For the reasons set forth below, the Magistrate Judge recommends

that the Commissioner's final decision be AFFIRMED.

## I.    PROCEDURAL HISTORY

On May 5, 2010, Plaintiff filed an application for SSI, alleging a disability onset

date of March 6, 2010.  (Transcript ("Tr.") 16.)  The application was denied initially and

upon reconsideration, and Plaintiff requested a hearing before an administrative law

judge ("ALJ").  (*Id.*)  On April 30, 2012, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff

participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A

vocational expert ("VE") also participated and testified.  (*Id.*)  On May 18, 2012, the ALJ

found Plaintiff not disabled.  (Tr. 13.)  On June 25, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)  On August 14, 2013, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 16, 17, 18.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred by improperly evaluating multiple opinions from treating medical sources; and (2) the ALJ erred by assigning a residual functional capacity that is not supported by substantial evidence.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in September 1960 and was 49-years-old on the date she filed her application.  (Tr. 27.)  She had a limited education and was able to communicate in English.  (*Id.*)  She had past relevant work as a baker's assistant.  (*Id.*)

### B.    Medical Evidence

In her Brief on the Merits, Plaintiff contends that Defendant did not properly evaluate her physical problems and that she "does not challenge the ALJ's treatment of her depression."  (Plaintiff's Brief ("Pl.'s Br.") 2.)  Accordingly, the Court will forego a lengthy recitation of Plaintiff's medical history with regard to Plaintiff's psychological impairments and will instead limit the discussion of the medical evidence to the relevant evidence related to Plaintiff's physical limitations.

2

### 1.      Medical Reports

Plaintiff was involved in a motor vehicle accident on February 12, 2010, which resulted in neck and back pain.  (Tr. 290-298.)  During an emergency room (ER) examination following the accident, Plaintiff exhibited some left shoulder and thoracic spine tenderness, but her physical examination was otherwise unremarkable.  (Tr. 295.) She was discharged the same day in good and stable condition and was prescribed Vicodin.  (Tr. 298.)  Lumbar spine x-rays from February 22, 2010, were negative.  (Tr. 289.)

On March 6, 2010, Plaintiff sought ER care for neck pain.  (Tr. 279-288.)  She reported that she had sustained whiplash in a car accident one month earlier, had stopped working for two weeks, and had recently returned to her job as a bakery assistant but was sent home by her supervisor because she could not perform the job. (Tr. 279.)  Plaintiff stated that she had taken Vicodin for her pain for one week but had taken no medications, including over-the-counter medications, after that time.  (Tr. 279.) She denied problems dressing herself.  (Tr. 284.)  On examination, Plaintiff's neck and back revealed no tenderness, spasm, or limited range of motion, and her neurological examination was unremarkable.  (Tr. 280-281.)  The attending physician assessed general neck and lower back pain and prescribed back exercises and pain medication. (Tr. 281-282, 286-287.)

On March 31, 2010, a lumbar spine MRI revealed slight levoscoliosis; degeneration of the L4-5 disc; mild degenerative changes; mild facet arthrosis and a 2 mm disc bulge or protrusion without canal narrowing, foraminal narrowing, or nerve root impingement at the L4-5 level; a 2 mm retrolisthesis and a 2 mm disc bulge with mild

3

facet arthrosis with no canal narrowing, nerve root impingement, or foraminal narrowing at the L5-S1 level; and a 1 mm disc bulge at the L3-4 level.  (Tr. 250-251.)  That same day, a cervical spine MRI revealed reversal of the normal cervical lordotic curve; disc space narrowing at the C4-5 level with mild degenerative changes; multilevel disc disease at the C4-5 and C5-6 levels; a 3 mm broad based disc herniation with mild canal narrowing and mild cord compression at the C4-5 level; a 2-3 mm disc bulge or protrusion with mild canal narrowing and slight cord impingement at the C5-6 level; a 2 mm disc bulge without canal stenosis at the C6-7 level; a 1-2 mm disc bulge without canal stenosis at the C7-T1 level; and a 2 mm right paramedian disc protrusion without canal stenosis or cord compression at the T3-4 level.  (Tr. 252-253.)

Plaintiff began treating with Prassana Soni, M.D., in April 2010 for her neck and back complaints.  (Tr. 304.)  Plaintiff reported that her pain was severe, constant, and kept her awake at night.  (*Id.*)  Dr. Soni tested and observed muscle weakness, spasms, tenderness, guarding, limited range of motion, and a positive straight leg raise test bilaterally.  (Tr. 304-305.)  He began administering a series of epidural steroid injections, and on May 5, 2010, estimated that Plaintiff would be able to return to work with no limitations by August 2010.  (Tr. 440.)

On May 20, 2010, Plaintiff reported some relief of her neck and radiating arm pain.  (Tr. 313.)  On June 3, 2010, Dr. Soni noted that Plaintiff's pain was severe, was constant, kept her awake at night, and prevented her from performing her activities of daily living.  (Tr. 316.)  Dr. Soni also reported that Plaintiff's "[p]ain is lot less, [r]ange o motion much improved. [S]he states that her pain is a 5 on a scale of 0-10."  (*Id.*)  Dr. Soni noted that Plaintiff would either require surgery in the future, or would required

4

chronic pain management for the rest of her life.  (Tr. 318.)

On June 22, 2010, at the state agency's request, Dr. Soni completed a form indicating that Plaintiff had neck and back pain that limited the range of motion in her neck, but that she had a normal gait and normal fine and gross manipulation abilities. (Tr. 303.)

Plaintiff attended two chiropractic visits with Roger Scott McMillen, D.C., on September 17, 2010, and October 13, 2010.  (Tr. 383-386.)  Dr. McMillen reported that Plaintiff had pain in her neck and back with movement, normal dermatomes, and positive straight leg raising bilaterally.  (*Id.*)  He noted that Plaintiff's problems were aggravated by driving, laying down, looking up or down, and rotating her neck.  (Tr. 386.)  On December 13, 2010, Dr. McMillen completed a form at the state agency's request indicating that he treated Plaintiff conservatively for four weeks and that Plaintiff reported periodic relief of her symptoms.  (Tr. 382.)  He opined that Plaintiff was restricted to sedentary work; she could sit for 30 minutes and stand for 30 minutes without resting; she could walk without limitation; she could bend at the waist on a limited basis; and she could lift no more than five pounds.  (*Id.*)

Plaintiff treated with Tony Lababidi, M.D., between December 2, 2010, and June 28, 2011, for her neck, hip, and back pain complaints.  (Tr. 387-395, 507-531.)  Plaintiff consistently rated her pain a 9 out of 10, but also stated that injections and medications had provided some relief of her pain symptoms in the past.  (*Id.*)  At examinations over this period, Dr. Lababidi observed that Plaintiff had tenderness but normal range of motion in her cervical spine; tenderness and reduced range of motion in her lumbar spine; positive straight leg raising on the right side; full range of motion in her arms and

5

legs; normal motor strength and reflexes in her extremities; and a right-side-leaning gait.  (Tr. 393-394, 508-509, 516-517, 520-521, 524, 527, 530.)  Dr. Lababidi recommended different medications, such as Ibuprofen, Neurontin, Ultram, Celebrex, and Volatren gel, which he adjusted over the treatment period, along with physical therapy, a TENS unit,[1] and an active lifestyle.  (Tr. 394, 517, 524, 527, 530.)  He also administered two epidural steroid injections.  (Tr. 513-514.)  On December 2, 2010, Dr. Lababidi gave Plaintiff an "off work excuse" until January 30, 2011.  (Tr. 394.)  On July 28, 2011, Plaintiff asked Dr. Lababidi to either "put her off work or to release her," so she was released from Dr. Lababidi's treatment.  (Tr. 509.)

Plaintiff received care from chiropractor Shawn Auck, D.C., between December 9, 2010, and March 24, 2011.  (Tr. 444-472.)  Dr. Auck wrote notes to support Plaintiff's absence from work between February 1, 2011, and June 1, 2011.  (Tr. 471-472.)

On March 30, 2011, Plaintiff reported that she was involved in another automobile accident.  (Tr. 516.)  She continued her treatment with Dr. Lababidi through the end of June, and also began receiving chiropractic care from Gregory J. Gordon, D.C.  Plaintiff received treatment from Dr. Gordon approximately twice per week between January 2011 and October 2011.  (Tr. 473-490.)  Over this period, Dr. Gordon generally noted that Plaintiff had moderate tenderness in her cervical and upper thoracic regions; mild tenderness in the lumbar regions; spasms in her upper trapezius muscles; decreased range of motion in her cervical and thoracic spines; normal muscle strength, sensation, and reflexes in her arms and legs; and a negative seated Kemp's

---

[1]     Plaintiff was not approved for the TENs unit.  (Tr. 509.)

test.  (Tr. 474-478, 482, 485, 486, 488).

Plaintiff received chiropractic care from Minos Floros, D.C., between March 31, 2011, and June 9, 2011.  (Tr. 532-547.)  At most visits, Plaintiff reported having some spasms and tenderness in her cervical and thoracic spine.  (*Id.*)  At some visits, Dr. Floros noted mild improvement in Plaintiff's symptoms.  (*Id.*)

On September 13, 2011, Plaintiff reported to Dr. Gordon that she had been in a third automobile accident.  (Tr. 474.)  Dr. Gordon assessed significant exacerbation of her cervical, thoracic, and lumbar sublaxation and sprains, and cervical degeneration, headaches, and muscle spasms.  (Tr. 474.)  Plaintiff had arrived at Dr. Gordon's office wearing a soft cervical collar, and Dr. Gordon advised her to only wear her neck brace if she was going to be active or riding in the car.  (*Id.*)  In many of Dr. Gordon's records, he observed muscle spasms and decreased range of motion.  (*See, e.g.,* Tr. 474, 476, 477.)  Plaintiff reported some relief of her pain symptoms with treatment and/or stated that her pain improved as the day progressed.  (Tr. 474-476.)

On March 19, 2012, Dr. Gordon wrote a note on Plaintiff's behalf requesting that she be excused from jury duty because she was unable to sit for long periods without experiencing pain and stiffness.  (Tr. 549.)

### 2. Agency Reports

On July 1, 2010, state agency consultative physician William Bolz, M.D., reviewed Plaintiff's medical records and opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours; sit for about six hours during an eight-hour workday with normal breaks; occasionally

push and pull bilaterally; climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; and occasionally reach overhead.  (Tr. 70-72.)  State agency physician W. Jerry McCloud, M.D., reviewed the updated record on February 18, 2011, and, like Dr. Bolz, concluded that Plaintiff could perform a modified range of light work despite her physical impairments.  (Tr. 88-89.)

**C.    Hearing Testimony**

 **1.    Plaintiff's Hearing Testimony**

Plaintiff was in an automobile accident on February 12, 2010.  (Tr. 50.)  She testified that since then, she experienced problems with her neck, low back, and wrists.  (Tr. 50-51.)  Plaintiff had a driver's license and was able to drive, but testified that she could not drive far due to pain in her neck and lower back.  (Tr. 48.)  She had trouble sleeping at night.  (Tr. 54.)  She did not have any difficulty showering, shaving, putting on her makeup, or caring for her hair and nails.  (*Id.*)  Plaintiff lived with her ex-husband, two daughters, and two grandchildren.  (Tr. 53.)  Plaintiff's daughters helped her with cooking and laundry.  (*Id.*)  If Plaintiff went grocery shopping, she used a motorized scooter.  (*Id.*)  On a typical day, Plaintiff bathed, read her bible, walked to the corner store and back for exercise, and did "light things" such as sweep the floor.  (*Id.*)  She spent most of her time sitting in a reclining chair.  (Tr. 55.)

Plaintiff wore a neck brace to her hearing, but testified that she did not wear it all the time.  (Tr. 48.)  Her doctor advised her to wear it sparingly.  (*Id.*)  Plaintiff also testified that she needed a cane to go up and down steps and to go to the corner store, which was about three blocks from her home.  (Tr. 52, 55.)

### 2. Vocational Expert's Hearing Testimony

Steven Davis, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience who could perform light work involving no climbing of ladders, ropes, or scaffolds; could occasionally stoop, kneel, crouch, and crawl; could not perform overhead reaching; could understand, remember, and carry out simple instructions and perform simple, routine tasks; could work in a relatively static low-stress workplace with few changes in work setting or work process and without static quotas or fast-paced production demands; could have no more than occasional, superficial contact with the public; and could not work in situations involving task completion dependent upon collaborative efforts with others.  (Tr. 59-60.)  The VE testified that the hypothetical individual could perform light, unskilled jobs existing in significant numbers in the national economy such as a table worker, an assembler of electrical equipment, and a key cutter.  (Tr. 61.)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient

9

must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant has not engaged in substantial gainful activity since May 5, 2010, the application date.

2.    The claimant has the following severe impairments: displaced cervical discs without myelopathy, spondylosis of the lumbar spine without myelopathy, and depressive disorder.

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds; can only occasionally stoop, kneel, crouch, and crawl; cannot engage in overhead reaching; can understand, remember, and carry out simple instructions and perform simple, routine tasks; requires a relatively static low stress workplace with few changes in work setting or work process and without static quotas or fast-paced production demands; is limited to no more than occasional, superficial contact with the public; and should not be placed in a situation in which task completion is dependent upon collaborative efforts with others.

5.    The claimant is unable to perform any past relevant work.

6.    The claimant was born in September 1960 and was 49-years-old, which is defined as a younger individual age 18-49, on the date the application was filed.  The claimant subsequently changed age category to closely approaching advanced age.

7.    The claimant has a limited education and is able to communicate in English.

8.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social
        Security Act, since May 5, 2010, the date the application was filed.

(Tr. 18-28.)

## LAW & ANALYSIS

### A.     Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

12

**B.** **Plaintiff's Assignments of Error**

### 1. The ALJ Erred by Improperly Evaluating Multiple Opinions from Treating Medical Sources.

Plaintiff argues that substantial evidence does not support the ALJ's residual functional capacity (RFC) determination, because the ALJ inadequately evaluated opinions from three of Plaintiff's chiropractors, Drs. McMillen, Auck, and Gordon.

### a. Drs. McMillen and Auck

Plaintiff contends that the ALJ erred by failing to acknowledge and/or analyze Dr. McMillen's December 13, 2010, opinion that Plaintiff: was restricted to sedentary work; could sit for 30 minutes and stand for 30 minutes without resting; could walk without limitation; could bend at the waist on a limited basis; and could lift no more than five pounds. (Tr. 382.) Furthermore, Plaintiff contends that the ALJ erred by failing to address Dr. Auck's "authorization for absence" forms recommending that Plaintiff should be excused from work from February 1, 2011, to June 1, 2011. (Tr. 471-472.) Plaintiff maintains that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ did not analyze the aforementioned evidence from Drs. McMillen and Auck.

As Plaintiff acknowledges in her Brief on the Merits (Plaintiff's Brief ("Pl.'s Br.") 9), a chiropractor is not a medical source entitled to controlling weight. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). In *Walters,* the Court held that although the plaintiff could offer his chiropractor's opinions to help the Commissioner assess the extent to which his impairments affected his ability to work, "the ALJ was not required to adopt the opinions of a treating chiropractor nor to give them controlling

13

weight." *Id.* at 530-31.   Nonetheless, Social Security Ruling 06-3p explains that

opinions and other evidence from medical sources who are not "acceptable medical

sources," like chiropractors, are still relevant to the ALJ's determination of a claimant's

RFC:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity.  Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03P, *6 (S.S.A Aug. 9, 2006).  Furthermore, Social Security Ruling 06-3p

provides that when evaluating opinion evidence from medical sources who are not

"acceptable medical sources," certain factors should be considered,[2] such as:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

*Id.* at *4-5.

Here, despite the ALJ's failure to explain the weight he afforded to the opinions

---

[2]     Not every factor for weighing evidence will apply in every case.  SSR 06-03P, *5 (S.S.A. Aug. 9, 2006).

of Drs. McMillen and Auck, the Court is nonetheless capable of conducting a meaningful review of the ALJ's decision.  First, contrary to Plaintiff's assertion, the ALJ did not wholly ignore Plaintiff's treatment relationship with Dr. McMillen.  In his decision, the ALJ specifically acknowledged Plaintiff's brief treatment with Dr. McMillen, noting: "From September 17, 2010 to October 13, 2010, the claimant underwent chiropractic care.  (6F/5-8)  During this time, it was observed that the claimant had pain with flexion, extension, lateral flexion, foramina compression, and right rotation."  (Tr. 23.) Therefore, a review of the ALJ's decision indicates that–even though the ALJ did not specifically name Dr. McMillen in his decision or indicate the weight he assigned to Dr. McMillen's opinion–he at least considered Dr. McMillen's treatment notes when reviewing Plaintiff's medical history.  Secondly, Plaintiff attended only two chiropractic visits with Dr. McMillen–the first on September 17, 2010, and the second on October 13, 2010.  (Tr. 383-386.)  In his opinion of Plaintiff's limitations, he noted that Plaintiff "was treated conservatively for 4 weeks" and "reported periodic relief of symptoms."  (Tr. 382.)  Thus, Dr. McMillen had only a brief, conservative treatment relationship with Plaintiff and had even reported that she was experiencing some relief with regard to her pain symptoms.  Furthermore, Dr. McMillen restricted Plaintiff to sedentary work "*at this time*."  (*Id.*) (emphasis added).  This suggests that Dr. McMillen did not expect Plaintiff's physical limitations to last for 12 consecutive months.  For these reasons, the ALJ's failure to explain the weight he assigned to Dr. McMillen's opinion is, at most, harmless error.

Similarly, the ALJ's failure to specifically address Plaintiff's treatment with Dr. Auck is harmless.  As an initial matter, while Plaintiff treated with Dr. Auck from

December 9, 2010, through March 24, 2011, Plaintiff admits in her Brief that "many of Dr. Auck's treatment notes are illegible." (Pl.'s Br. 6.)  As a result, Plaintiff's issue as to Dr. Auck is with the ALJ's failure to consider Dr. Auck's recommendations that Plaintiff be excused from work from February to June 2011.  (Tr. 471-472.)  Dr. Auck concluded in his recommendations only that Plaintiff should be excused from work; he did not assign Plaintiff specific functional limitations.  It is well established that certain issues are reserved to the Commissioner for determination.  *See* 20 C.F.R. § 416.927(d). Among these are whether a claimant is disabled.  *See* 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision whether you meet the statutory definition of disability. . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). To give controlling weight to a physician's statements that a claimant is unable to work "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5P (S.S.A July 2, 1996).  Accordingly, the ALJ's failure to discuss the weight he gave to Dr. Auck's opinion is harmless, as the ALJ was not required to defer to any physician's opinion on the issue of whether Plaintiff was able to work.  Moreover, like Dr. McMillen, Dr. Auck's recommendations that Plaintiff be excused from work for four months show that Dr. Auck did not expect Plaintiff's symptoms to last for 12 consecutive months.  For the foregoing reasons, this Court has not been prevented from meaningfully reviewing the ALJ's decision despite the ALJ's lack of discussion regarding Plaintiff's treatment with Dr. Auck.

16

### b.  Dr. Gordon

Dr. Gordon treated Plaintiff approximately twice per week between January 2011 and October 2011.  (Tr. 473-490.)  On March 19, 2012, he wrote a letter on behalf of Plaintiff in response to her notice for jury duty.  (Tr. 549.)  In his letter, Dr. Gordon asserted that Plaintiff should be excused from jury duty because she "is unable to sit for long periods of time without experiencing increased low back pain and stiffness."  (*Id.*)  The ALJ explicitly rejected Dr. Gordon's opinion in his hearing decision and explained his reasons for doing so.  The ALJ noted:  "Dr. Gordon's opinion is given little weight.  Although Dr. Gordon provided chiropractic care for the claimant, his opinion that the claimant is unable to sit for extended periods is inconsistent with his repeated findings of only mild to moderate tenderness in the claimant's lumbar region."  (Tr. 25.)

Here, the ALJ explicitly acknowledged Dr. Gordon's treatment relationship with Plaintiff and explained why he rejected Dr. Gordon's opinion that Plaintiff was unable to sit for an extended period of time.  As a result, this Court is able to determine that the ALJ at least considered the relevant evidence from Dr. Gordon in assessing Plaintiff's RFC, but rejected it due to its inconsistency with Dr. Gordon's own treatment notes.[3] Because Dr. Gordon, a chiropractor, is not an "acceptable medical source," the ALJ had no burden to provide good reasons for rejecting Dr. Gordon's opinion or further elaborate upon his decision to assign the opinion little weight.  Accordingly, with respect to Dr. Gordon, the ALJ did not err.

---

[3]     Indeed, consistent with the ALJ's conclusion, Dr. Gordon consistently observed that Plaintiff had no pain in her arms or legs; normal muscle strength, sensation, and reflexes in her arms and legs, and a negative seated Kemp's test.  (Tr. 474-478, 482, 485, 486, 488.)

17

### 2.  The ALJ Erred by Assigning a Residual Functional Capacity that is Not Supported by Substantial Evidence.

Plaintiff takes issue with the ALJ's RFC determination, arguing that the ALJ inaccurately summarized objective test results, cherry-picked subjective reports instead of considering the medical evidence as a whole, and severely mistook Plaintiff's self-reported activities of daily living.  Plaintiff maintains that the "cumulative effect of these errors renders [the ALJ's] RFC finding unsupported by substantial evidence."  (Pl.'s Br. 13.)

RFC is an indication of a claimant's work-related abilities despite her limitations. *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. § 416.945(a), and must consider all of a claimant's medically determinable impairments, both individually and in combination, S.S.R. 96-8p.

Here, Plaintiff argues that the ALJ's summary of the medical evidence is inaccurate because the ALJ "downplayed" relevant test results and cherry-picked the record.[4]  (Pl.'s Br. 14.)  Based on a review of the ALJ's decision, Plaintiff's argument on

---

[4]      For example, Plaintiff argues that the ALJ improperly considered the following evidence:

•       Dr. Soni opined that Plaintiff would require an anterior cervical discectomy and fusion at some point in the future, and if the surgery failed (or if Plaintiff did not have the surgery), she would require life-long chronic pain management.  (Tr. 318.)  The ALJ did not specifically mention this in his opinion.

18

this point is not well taken.  As Defendant correctly notes in her Response Brief, a review of the ALJ's decision indicates that he did not wholly ignore the abnormal findings reflected in Plaintiff's diagnostic studies or physical examinations.  To the contrary, the ALJ appropriately credited such abnormal findings when determining that Plaintiff had severe impairments that limited her workplace capabilities.  For example, Plaintiff challenges the ALJ's analysis of records from Dr. Lababidi, Plaintiff's pain management physician, and seems to suggest that the ALJ focused only on Dr. Lababidi's "normal" examination findings.  Notably, however, Plaintiff admits that the ALJ acknowledged positive straight leg tests and findings of an abnormal gait, cervical spine tenderness, and decreased range of motion of the lumbar spine, and also notes that the ALJ discussed how Dr. Lababidi prescribed a TENS unit, encouraged physical

--------------------

- An MRI of Plaintiff's cervical spine from March 2010 revealed a 3 mm C4-5 broad based disc herniation with mild canal narrowing and mild cord compression; a 2-3 mm C5-6 disc bulge or protrusion with mild canal narrowing and slight cord impingement; and three other levels with disc bulges or protrusions.  (Tr. 253.)  Plaintiff maintains that the ALJ improperly omitted all reference to the cord compression at C4-5 and inadequately described the spinal cord impingement at the C5-6 level as only slight cord impingement.

- Plaintiff notes that although some of Dr. Lababidi's records contain normal findings, "[t]he fact remains that Plaintiff has two (2) cervical herniated discs that are impinging upon or compressing the spinal cord; many other cervical, thoracic, and lumbar discs are bulging or protruding; she has multiple positive straight leg raise tests; she walks - at least at times - with an abnormal gait; she received epidural steroid and trigger point injections; and multiple treating sources have written her off of work and opined that she is unable to perform activities compatible with anything greater than sedentary work."  (Pl.'s Br. 15)  (Plaintiff did not include citations to the record to support the aforementioned "facts.")

therapy, and opined that Plaintiff was unable to work until at least January 30, 2011.

(Pl.'s Br. 15, Tr. 23.)  Thus, the ALJ did not ignore relevant evidence tending to support

Plaintiff's claim for disability; rather, he weighed the evidence–both the normal and

abnormal findings–and concluded that, even with the effects of her physical

impairments, Plaintiff could perform a limited range of light work.  (Tr. 21.)

Furthermore, as Defendant notes, credible evidence exists to support the ALJ's

RFC assessment, such as Dr. Soni's opinion that Plaintiff could return to work without

limitation in August 2010 (Tr. 440), the opinions of state agency consultants Drs. Bolz

and McCloud that Plaintiff could perform a range of light work (Tr. 70-72, 88-89), and

normal examination findings documented by the physicians who treated Plaintiff.  While

Plaintiff may be correct that, despite some normal findings, evidence supports the

conclusion that Plaintiff cannot perform light work, this is not the appropriate standard to

apply to the ALJ's decision.  An ALJ's decision that is supported by substantial

evidence will not be overturned even though substantial evidence supports the opposite

conclusion.  *Ealy*, 594 F.3d at 512.  Accordingly, since the ALJ's finding is supported by

substantial evidence as detailed in the ALJ's decision (Tr. 21-27), the existence of other

evidence supporting Plaintiff's allegation of disability would not, alone, be an

appropriate reason to reverse the ALJ's decision.[5]

---

[5]     Moreover, in arguing that the ALJ's RFC determination lacks the support
of substantial evidence, Plaintiff has not addressed any records from
acceptable medical sources indicating not only that Plaintiff has
diagnosed impairments, but also that she has associated functional
limitations that could render her disabled.  It is well established that the
"mere diagnosis" of a condition "says nothing" about its severity, or its
effect on a claimant's ability to perform work.  *Higgs v. Bowen*, 880 F.2d
860, 863 (6th Cir. 1988).  The fact that treatment notes from physicians

Additionally, Plaintiff's argument that the ALJ based his RFC determination primarily on an erroneous credibility analysis is also unpersuasive.  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  However, the ALJ's credibility determinations must be reasonable and based on evidence from the record.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983).  The ALJ also must provide an adequate explanation for his credibility determination.  "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.).  Rather, the determination "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight."  *Id.*

When a claimant complains of disabling pain, the Commissioner must apply a two-step test known as the "Duncan Test" to determine the credibility of such complaints.  *See Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).  First,

_____

include diagnoses that support Plaintiff's allegations of neck and back pain does not, alone, require the ALJ to include limitations specifically related to those diagnoses in Plaintiff's RFC.

21

the Commissioner must examine whether the objective medical evidence supports a

finding of an underlying medical condition that could cause the alleged pain.  *Id.*

Second, if there is such an underlying medical condition, the Commissioner must

examine whether the objective medical evidence confirms the alleged severity of pain,

or, alternatively, whether the objectively established medical condition is of such a

severity that it can reasonably be expected to produce the alleged severity of pain.  *Id.*

In making this determination, the ALJ must consider all of the relevant evidence,

including six different factors.[6]  *See Felisky,* 35 F.3d at 1039–40 (citing 20 C.F.R. §

404.1529(c)).  Courts are not required to discuss all of the relevant factors; an ALJ may

satisfy the Duncan Test by considering most, if not all, of the relevant factors.  *Bowman

v. Chater,* 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per

curiam).

      Here, a review of the ALJ's decision reveals that the ALJ discussed most, if not

all, of the relevant factors in his assessment of Plaintiff's condition.  (Tr. 21-27.)  The

ALJ examined Plaintiff's daily activities, her treatments and her responses to those

---

[6]     These factors include the following:
(1) the claimant's daily activities;
(2) the location, duration, frequency, and intensity of the claimant's alleged pain;
(3) precipitating and aggravating factors;
(4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
(5) treatments other than medication that the claimant has received to relieve the pain; and
(6) any measures that the claimant takes to relieve her pain.

treatments, the clinical examination findings, and the physician statements of record.

(*Id.*)  Thus, the ALJ considered the relevant evidence.

Moreover, in assessing Plaintiff's complaints of neck and back pain, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment.  (Tr. 22.)  Thus, the ALJ did not reject Plaintiff's subjective complaints altogether; rather, he determined that his RFC assessment adequately accounted for Plaintiff's limitations based on a careful consideration of the evidence.  In finding that Plaintiff was capable of performing a range of light work despite her limitations, the ALJ explained:

> The claimant's testimony regarding her activities of daily living is inconsistent with the alleged severity of her impairments.  In written statements, the claimant asserted that she shared a home with her former husband.  (6E/3) She indicated that she did not need special reminders to take care of her personal needs and grooming, nor did she need reminders to take her medications.  (6E/5) The claimant provided that she was able to drive a car and could use public transportation.  She stated that she shopped in stores and by mail for clothing, shoes, and food.  The claimant indicated that she was able to manage her finances independently and that her ability to handle money had not changed as a result of her impairments.  She also asserted that her hobby included reading and that she read on a daily basis.
>
> During the hearing, the claimant testified that she had a driver's license and was able to drive.  It was noted that the claimant wore a neck brace to the hearing, yet she conceded that she did not wear the neck brace all the time and was specifically informed by her physician to wear the brace sparingly.  The claimant provided that she had to use a cane to walk even to her corner store, yet testified that she did not bring the cane with her to the hearing room.  She indicated that she shared a home with her former husband, her two daughters, and her grandchildren.  The claimant stated that

23

> she had no trouble with personal care and maintaining her
> personal hygiene.  She provided that during a typical day she
> showered, read her bible, walked to the corner store and back
> for exercise, and performed light household chores.  The
> claimant also  indicated that the only medication she currently
> took for pain was Ibuprofen.

(Tr. 26-27.)

Thus, the ALJ specifically compared Plaintiff's alleged symptoms to other evidence in the record and found that Plaintiff's subjective complaints were inconsistent with the objective evidence.  This inconsistency is an appropriate basis for an adverse credibility finding.  See *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility . . . is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.")  Accordingly, the ALJ adequately conducted a proper pain and credibility analysis, and Plaintiff's argument on this point is without merit.

## VI.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: May 9, 2014

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**